# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BONNIE R. EDWARDS, | : | |
| Plaintiff, | : | |
| v. | : | No. 3:10cv1017 (MRK) |
| MICHAEL J. ASTRUE, | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION

On July 1, 2010, Plaintiff Bonnie R. Edwards filed a Complaint [doc. # 1] pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 405(g). Ms. Edwards formerly worked as a financial assistant for Yale University in New Haven, Connecticut. She has a number of physical and mental ailments and has not worked since December 2002. She seeks review by this Court of a final decision of Defendant Michael J. Astrue, the Commissioner of the Social Security Administration ("the Commissioner"), denying her application for Social Security Disability Insurance and Supplemental Security Income Benefits.

There are two motions currently pending in this action. The first is Ms. Edwards's Motion for Order Reversing Decision [doc. # 15]. In support of that motion, Ms. Edwards argues that the Administrative Law Judge's ("ALJ's") finding that Ms. Edwards was not disabled during the period between January 1, 2003 and November 23, 2009 was not supported by substantial evidence and was contrary to the applicable legal standards. Specifically, she alleges that the ALJ (1) failed to apply the correct legal standard, (2) improperly relied on "phoned-in" testimony from the medical expert, (3) failed to assess impairments in combination, (4) made an unsupported and illogical residual functional capacity assessment, (5) made baseless credibility

findings, and (6) failed to develop the administrative record. *See* Mem. in Support of Pl.'s Mot. to Reverse the Decision of the Commissioner [doc. # 15-1].

The second is the Commissioner's Motion for an Order Affirming the Decision of the Commissioner [doc. # 16]. In support of this latter motion, the Commissioner argues that the Court should dismiss Ms. Edwards's case because the ALJ's decision was supported by substantial evidence and evinced no legal error. Specifically, the Commissioner argues that (1) substantial evidence supports the ALJ's determination, (2) the ALJ considered the combined effects of Ms. Edwards's impairments, (3) the ALJ properly assessed Ms. Edwards's credibility, (4) the ALJ properly developed the record, (5) the ALJ properly found that Ms. Edwards could perform other work that existed in significant numbers in the national economy, (6) the ALJ properly assessed plainitff's substance abuse, and (7) the ALJ properly allowed the medical expert to testify by telephone. *See* Def.'s Mem. in Support of the Mot. for an Order Affirming the Decision of the Commissioner [doc. # 16-1].

For the reasons set forth in more detail below, remand is warranted on the basis that Ms. Edwards had no notice that the medical expert would be testifying telephonically and that this testimony occurred over Ms. Edwards's objection. The Court therefore GRANTS Ms. Edwards's Motion for Order Reversing Decision [doc. # 15] to the extent it seeks to remand this case for a *de novo* hearing and DENIES the Commissioner's Motion for an Order Affirming the Decision of the Commissioner [doc. # 16].

**I.**

The Court assumes the parties' familiarity with the factual and procedural background of this case and will therefore only briefly describe the facts relevant to this opinion.

Ms. Edwards has a history of substance abuse and numerous mental and physical ailments. In December 2002, Ms. Edwards's employment as a financial assistant for Yale University ended. *See* Administrative R. at 69-70. Ms. Edwards filed an application with the Social Security Administration on April 17, 2006 alleging an onset of disability as of January 1, 2003. *See id.* at 224-26. This application was denied on August 3, 2006. *See id.* at 139-41, 142-45. Ms. Edwards requested reconsideration, which was denied on January 12, 2007. *See id.* at 148-50. On February 1, 2007, Ms. Edwards requested a hearing. *See id.* at 151-52.

On December 17, 2007, ALJ Ronald J. Thomas presided over Ms. Edwards's administrative hearing, in which there was no expert medical testimony. On January 25, 2008, ALJ Thomas issued a partially favorable decision, finding Ms. Edwards disabled as of July 1, 2007. *See id.* at 113-32. Ms. Edwards sought an appeal, and on January 15, 2009 the Appeals Council vacated the January 25, 2008 decision in its entirety and remanded the case. *See id.* at 135-38. In its remand order, the Appeals Council required, among other things, ALJ Thomas to obtain testimony from a medical expert. *See id.* at 137.

A second hearing was held on June 24, 2009 before ALJ Thomas. *See id.* at 60-107. The ALJ's hearing notice of June 9, 2009 failed to inform Ms. Edwards that the medical expert would not be physically present at the hearing and instead would testify by telephone. *See id.* at 43-47. When Ms. Edwards learned at the hearing that the medical expert's testimony would be made by telephone, she objected on the basis that there had been no notice of telephonic testimony and that it was her right to cross-examine the witness in person. *See id.* at 64. The ALJ noted the objection but did not rule on it. *See id.* Two days after the hearing, Ms. Edwards wrote to the ALJ to request a supplemental hearing so that the medical expert could be questioned in person. *See id.* at 385-86. Ms. Edwards argued that she had no notice that the medical expert's testimony

would be telephonic and that the Social Security Administration's regulations do not provide for such testimony. *See id.*

On November 23, 2009, ALJ Thomas found that Ms. Edwards had the following severe impairments: "opioid dependence; cocaine dependence; alcohol dependence; and post traumatic stress disorder, major depression, and bipolar disorder." *Id.* at 13. After finding (1) that Ms. Edwards would not have an impairment or combination of impairments that meets or medically equals the impairments listed in 20 C.F.R. §§ 404.1520(d) and 416.920(d) and (2) that she would have the residual functional capacity to perform work subject to some non-exertional limitations if she ceased her substance abuse, ALJ Thomas denied Ms. Edwards's application. *See id.* at 10-27. ALJ Thomas's second decision was based in part on the medical expert's telephonic testimony: ALJ Thomas twice noted that the medical expert testified "persuasively." *Id.* at 23, 24; *see also id.* at 13 (noting the medical expert's opinions regarding Ms. Edwards's substance abuse); *id.* at 15 ("[T]he Administrative Law Judge finds persuasive [the medical expert's] opinion that the severity of the claimant's impairments meets the medical criteria for Listing 12.09 substance abuse disorder.").

Ms. Edwards raised the potential legal error of the medical expert's telephonic testimony in her submission to the Appeals Council, *see id.* at 387-90, but the Appeals Council denied her appeal without addressing this concern, *see id.* at 1-3. After thus exhausting her administrative remedies, Ms. Edwards seeks judicial review of the Commissioner's final decision.

## II.

This Court's authority to review the Commissioner's decision denying Ms. Edwards's application for Social Security Disability Insurance and Supplemental Security Income Benefits, as embodied in the ALJ's written decision, is limited. The Court may only set aside the Commissioner's decision if it resulted from legal error or if the Commissioner's factual findings

4

were not supported by substantial evidence. *See, e.g.*, *Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008).

Questions of legal error provide an independent basis for judicial review:

> Although factual findings by the Commissioner are "binding" when "supported by substantial evidence," "[w]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal."

*Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (alteration in original).

"Substantial evidence" is less than a preponderance of the evidence, but "more than a mere scintilla"—it is the amount of evidence that "a reasonable mind might accept as adequate to support a conclusion." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence standard is a "fairly deferential standard." *Gonzalez ex rel. Guzman v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 360 F. App'x 240, 242 (2d Cir. 2010) (summary order) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). In other words, absent an error of law, this Court must uphold the Commissioner's determination if it is supported by substantial evidence, even if this Court would have ruled differently on its own. "'[T]o determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 61-62 (2d Cir. 1999) (quoting *Monguer v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

It was Ms. Edwards's burden to demonstrate to the Commissioner that she was unable to work from January 1, 2003 through November 23, 2009 because she had a disability, defined as

a "medically determinable physical or mental impairment [or combination of impairments] which c[ould] be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to prevail, then, Ms. Edwards had to show that her impairment or combination of impairments was "of such severity that [s]he [was] not only unable to do [her] previous work but c[ould not], considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exist[ed] in the national economy." *Id.* § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1520(c) (requiring that impairment must "significantly limit[] . . . physical or mental ability to do basic work activities" in order to be considered "severe").

The Commissioner must apply a familiar five-step analysis to determine whether or not an applicant for Social Security Disability Insurance and Supplemental Security Income Benefits is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The Second Circuit has described that five-step analysis as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)) (alterations in original).

Through the fourth step of the analysis, "the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform," given what is known as her "residual functional capacity." *Gonzalez*, 360 Fed. App'x at 243. "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. *See* 20 C.F.R. § 416.945(a).

When applying that five-step analysis, the ALJ must take four different categories of evidence into consideration. The Commissioner must consider, to the extent that such evidence is in the record, "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Monguer*, 22 F.2d at 1037). Furthermore, the ALJ must keep in mind in applying the five-step analysis that "eligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute, to be broadly construed and liberally applied." *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978) (quotation marks omitted); *see Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990).

## III.

The ALJ found—and the Commissioner does not dispute—that Ms. Edwards has not engaged in any substantial gainful activity since January 1, 2003 and that Ms. Edwards has had a number of severe impairments. *See Rosa*, 168 F.3d at 77. Ms. Edwards does not argue that she has ever suffered from any impairment that is listed in Appendix 1 of the regulations or that meets or medically equals a listed impairment. *See id.* Ms. Edwards does not argue that,

7

assuming the ALJ's determinations regarding her residual functional capacity are correct, there are no jobs she could perform that exist in significant numbers in the national economy. *See id.*

Thus, the question before this Court is whether the ALJ erred in determining that, if she stopped her substance abuse, Ms. Edwards would have had the residual functional capacity to perform a full range of work at all exertional levels but with some nonexertional limitations between January 1, 2003 and November 23, 2009. As noted above, Ms. Edwards has raised six challenges to the ALJ's findings. As the Court decides that the lack of notice of the telephonic testimony and that ALJ Thomas's possible reliance on the medical expert's improper telephonic testimony constitutes legal error, remand is warranted. There is no need to address Ms. Edwards's other claims.

## IV.

The Social Security Administration's regulation at issue provides in relevant part that "the administrative law judge determines whether [the] appearance . . . of any other individual who is to appear at the hearing will be made in person or by video teleconferencing" and sets forth the requirements for when video teleconferencing testimony is admissible. 20 C.F.R. § 404.936(c). This regulation includes an internal reference to another regulation, which provides in relevant part that witnesses "may appear at a hearing in person, or, when the conditions in § 404.936(c) exist, by video teleconferencing." 20 C.F.R. § 404.950. The Administration's regulations also provide that the claimant will "be told if [the] appearance . . . of any other party or witness is scheduled to be made by video teleconferencing rather than in person." 20 C.F.R. § 404.938(b). The notice of hearing must indicate "that the scheduled place for the hearing is a teleconferencing site and explain what it means to appear at [the] hearing by video

teleconferencing." *Id.* The notice must further provide plaintiff with directions on how to object and request an in-person hearing. *See id.*

The Social Security Administration undertook the significant process of notice-and-comment rulemaking before the above regulations were approved. *See* Video Teleconferencing Appearances Before Administrative Law Judges of the Social Security Administration, 68 Fed. Reg. 69003 (Dec. 11 2003) (codified at 20 C.F.R. §§ 404.929, 404.938, 404.950, 416.1429, 416.1436, 416.1438, 416.1450). Furthermore, the Social Security Administration conducted hearings utilizing video teleconferencing in Iowa and those tests were successful—but no tests were conducted with telephonic testimony. *See id.* at 69004.

During the notice-and-comment rulemaking process, the Administration observed that its reasons for allowing testimony by video teleconferencing include the ability to provide more timely hearings, savings in ALJ travel time, faster case processing, and higher ratio of hearings held to hearings scheduled. *Id.* While all of these factors might be similarly served by allowing witnesses to testify by telephone, the two forms of testimony are not considered to be equivalent. If there is a problem with the video teleconferencing equipment before or during a hearing, the witness may not simply call in: rather, the entire hearing must be rescheduled. *Id.* at 69006.

Further, the Social Security Administration has proposed, but not passed, a regulation that would allow telephonic testimony at administrative hearings. It is noteworthy that in 2007, the Association of Administrative Law Judges was highly critical of these proposed regulations:

> We have strongly opposed the introduction of telephone hearings (proposed rules 20 CFR §§ 404.936(c), 416.1436(c)). A telephone hearing does not provide for the due process required for a constitutional hearing, the hearing required by the Social Security Act, or the procedure provided for by the Administrative Procedure Act. A telephone hearing adversely affects the ability of the administrative law judge to ascertain the identity of the participants and to determine the credibility of either the claimant or the witnesses because their demeanor cannot [be] observed by the judge. A telephone hearing adversely

9

affects the opportunity of the claimant to observe the judge and what is actually going on in the hearing, including undermining the claimant's ability to effectively cross-examine the testimony of expert witnesses.[1] . . . This type of hearing is contrary to the long standing culture and tradition of the American legal system in general and Social Security disability process in particular.

*Comments of the Association of Administrative Law Judges Regarding Social Security Administration Notice of Proposed Rulemaking*, http://www.aalj.org/pdf/08d003.pdf (last visited August 10, 2011). Not only does this separate rulemaking procedure demonstrate that the Administration considered telephonic testimony and video conference testimony to be distinct, it highlights the ALJs' concerns that the benefits of telephonic testimony do not outweigh its potential drawbacks.

Expanding on the regulations, the Social Security Hearings, Appeals and Litigation Law Manual ("HALLEX") states that ALJs may obtain expert medical or vocational testimony in three ways. Specifically, it provides that "[t]he preferred method for obtaining [medical expert] or [vocational expert] opinion is through in-person testimony or testimony taken via telephone or video teleconference at a hearing." HALLEX § I-2-5-30, 1994 WL 637367 (Sept. 28, 2005).

Where, as here, the statute is silent or ambiguous, courts must defer to a reasonable construction by the agency charged with the statute's implementation. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984). Although the Second Circuit Court of Appeals has not reached the issue, other circuits and Second Circuit district courts have found that HALLEX polices are not regulations and therefore not deserving of controlling weight. *See, e.g.*, *Bunnell v. Bamhart*, 336 F.3d 1112, 1115

---

[1] Although the Association of Administration Law Judges' observation that a telephonic hearing undermines the claimant's ability to cross-examine expert witnesses appears to assume that the claimant is appearing by telephone, the reasoning applies equally to the situation where the medical expert is providing only telephonic testimony.

(9th Cir. 2003); *Martinez v. Astrue*, No. 07cv699 (SRU), 2009 WL 840661, at *2 n.1 (D. Conn. Mar. 30, 2009). An administrative agency is required to follow its own internal policies when they accord with or are more demanding than the statute or its regulations. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (finding that, despite not being binding, the Social Security Administration should follow HALLEX policies when individual rights are affected, even when the policies are more "rigorous than would otherwise be required"); *McCoy v. Barnhart*, 309 F. Supp. 2d 1281, 1284 (D. Kansas 2004) (noting that when "the HALLEX simply restates an administrative regulation, it is enforceable"). However, where HALLEX policies authorize procedures not addressed in the regulations or statute, they do not have the force of law. *See McCoy*, 309 F. Supp. 2d at 1284.

As an initial matter, the Court observes that the Commissioner committed legal error by not providing Ms. Edwards with notice that the medical expert would be testifying by telephone. Although there is no regulation that specifically requires such notice, in large part because there is no regulation that discusses telephonic testimony, the Court extrapolates such a requirement from the regulation requiring notice in the event that a witness will not be appearing in person. *See* 20 C.F.R. § 404.938(b) (The claimant will "be told if [the] appearance . . . of any other party or witness is scheduled to be made by video teleconferencing rather than in person."); *cf. Rice v. Astrue*, No. 5:09CV00093 JTR, 2010 WL 3417803, at *7 n.7 (E.D. Ark. Aug. 26, 2010) (finding that claimant had actual notice that the ALJ would take medical expert testimony by telephone, which undermined claimant's argument that he was not given regulation-required notice).

Turning next to the question of the telephonic testimony itself, both parties agree that the Social Security Administration's regulations do not explicitly authorize or preclude telephonic testimony from a party, fact witness, or expert. Ms. Edwards asserts that because the governing

11

regulations do not specifically authorize telephonic testimony, the HALLEX provision approving telephonic testimony by a medical expert is contrary to the regulations. *See* Mem. in Support of Pl.'s Mot. to Reverse the Decision of the Commissioner [doc. # 15-1] at 30. The Commissioner, unsurprisingly, counters that because the regulation does not state that personal and video teleconference appearances are the only two ways by which a witness may provide testimony, the HALLEX provision governs and the ALJ did not violate the regulation by allowing the medical expert to testify by telephone. *See* Def.'s Mem. in Support of the Mot. for an Order Affirming the Decision of the Commissioner [doc. # 16-1] at 30-31.

The separate rulemaking procedures for different forms of testimony favor Ms. Edwards's argument, in that the varied processes imply that the Social Security Administration views the methods of providing testimony—in-person, video teleconferencing, and telephonic testimony—as distinct. Similarly, the fact that the proposed rules for telephonic testimony have not been approved bolsters Ms. Edwards's claim that HALLEX improperly expanded the methods by which testimony may be offered.

The few courts that have addressed this issue have usually found the inclusion of such telephonic evidence to be legal error.[2] *See Ainsworth*, No. 09-cv-286-SM, 2010 WL 2521432 (D.N.H. June 17, 2010); *Porter v. Barnhart*, No. C05-5166FDB, slip op. (W.D. Wash. Mar. 3, 2006) (recommended ruling) (*Porter I*); *Porter v. Barnhart*, No. C05-5166FDB, slip op. (W.D. Wash. Apr. 11, 2006) (*Porter II*); *cf. Hepp v. Astrue*, 511 F.3d 798 (8th Cir. 2008) (finding that

---

[2] Many courts have acknowledged situations in which an ALJ allowed expert medical testimony by telephone, but those courts did not consider whether that practice is consistent with the governing regulations. *See, e.g.*, *Todman v. Astrue*, No. 07 Civ. 10473 (JSR), 2009 WL 874222, at *4, *6 (S.D.N.Y. Mar. 30, 2009). At least one magistrate judge has determined that the telephonic testimony of a vocational expert was error, albeit harmless error. *See Palaschak v. Astrue*, No. 08-CV-1172 (GLS), 2009 WL 6315324 (N.D.N.Y. Nov. 18, 2009) (recommended ruling).

12

claimant's constitutional due process rights were not violated by the ALJ's admission of a medical expert's telephonic testimony, though alluding to concerns the a telephonic cross-examination would "violate agency regulations"); *Rice*, 2010 WL 3417803, at *7 (finding that claimant had not "presented his arguments with sufficient specificity to allow the Court to make a determination of whether the ALJ's use of the medical expert, including the taking of testimony by telephone, was erroneous"); *but see Goodwin v. Astrue*, No. 10-cv-233-PB, 2011 WL 1630927, at *11 (D.N.H. Apr. 11, 2011) (finding that claimant's objection to the use of telephonic medical expert testimony would not succeed).

The *Ainsworth v. Astrue* court determined that, regardless of "whether the practice of accepting expert testimony by telephone is or is not authorized by the governing regulations, remand is required." *Ainsworth*, 2010 WL 2521432, at *4. In reaching this conclusion, the court found significant the facts that (1) insofar as the transcript includes many gaps due to the call being inaudible, the Commissioner arguably failed to provide a copy of a transcript on the record, *see id.* (citing 42 U.S.C. § 405(g); *Dandeneau v. Heckler*, 607 F. Supp. 583, 584 (D. Me. 1985)); (2) the practice of accepting critical testimony by telephone is not "universally applauded," *see id.*; and (3) to the extent it was error to admit the medical expert's telephonic testimony, the error was not harmless because the court relied heavily on the expert's opinion, *see id.* at *3.

In *Porter v. Barnhart*, Magistrate Judge J. Kelley Arnold went farther in finding that allowing telephonic testimony from a medical expert violated the Social Security Administration's regulations:

> [t]he plain and natural meaning of this regulation does not support the administration[']s use of telephone appearances in its administrative hearings. In other words, the regulation limits witness appearance and testimony to personal appearances and videoconferences. The specificity used in allowing

13

> videoconferences supports the finding that telephone conferences are not an acceptable media to facilitate an appearance by a witness at an administrative hearing.

*Porter I*, slip op. at 3.

District Court Judge Franklin D. Burgess agreed. *See Porter II*, slip op. at 3 ("[T]he natural and plain meaning of the regulations in question establishes that there are only two methods by which a witness may appear at Social Security hearings, and a disability claimant is entitled to notice of which method will be used."). While the magistrate judge did not discuss HALLEX's relevance, Judge Burgess noted that "the HALLEX is not binding. While there may be practical reasons that support taking a witness's testimony by telephone, . . . those reasons have not resulted in an express provision being placed in the regulations." *Id.*

It appears that the use of telephonic testimony by medical experts is on the rise across the nation. Well over half of the instances in which a federal court notes that a medical expert testified by telephone in a Social Security benefits case have occurred in the last three years. Given the growing use of medical expert telephonic testimony in Social Security Administrative hearings—which likely serves efficiency purposes and may not often disadvantage claimants— this Court will not go so far as to rule that all medical expert testimony in such hearings must be either in person or by video teleconference. However, ALJs must provide claimants with notice that a witness will be testifying telephonically, and absent a new rule, medical experts should not be allowed to testify telephonically over a claimant's timely objection. If the Commissioner wishes to receive *Chevron* deference when it allows such telephonic testimony without notice or over claimants' objections, the Social Security Administration must create a rule through the approved notice-and-comment process.

**V.**

The Commissioner argues that, should this Court find that medical expert testimony should have been given either in person or by video teleconference, the Court should find the error to be harmless, as Ms. Edwards has not shown how such error resulted in prejudice. In response, Ms. Edwards directs the Court to the two aforementioned *Porter* cases, but neither one addresses the question of whether the error was harmless.

"[R]eversal and remand are [not] required each and every time an administrative agency assigns a wrong reason for its action; rather, it requires reversal and remand *only* where there is a significant chance that but for the error, the agency might have reached a different result." *N.L.R.B. v. Am. Geri-Care, Inc.*, 697 F.2d 56, 64 (2d Cir. 1982) (emphasis in original). "[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

Ms. Edwards was harmed by the lack of notice that the medical expert would be testifying by telephone. Ms. Edwards did not learn that the medical expert would be offering only telephonic testimony until she arrived at the administrative hearing. Had she been able to object to this form of testimony earlier, the ALJ might have been more willing to sustain her objection, and the medical expert might have appeared in person or by video teleconference. It is possible that Ms. Edwards's cross-examination may have been more effective or that the ALJ may have found the medical expert's testimony to be less persuasive.

Furthermore, this Court cannot find that the telephonic testimony of the medical expert, taken over Ms. Edwards's objection, was harmless. It is widely recognized that "confrontation is essential to fairness." *Coy v. Iowa*, 487 U.S. 1012, 1019 (1988) (finding that the placement of a screen between a defendant and alleged child sexual assault victim in a criminal trial violates the

Confrontation Clause). While the Confrontation Clause itself does not apply to Ms. Edwards's situation, the Supreme Court's statements regarding the importance of face-to-face interactions are relevant. *See id.* at 1019-20 ("[T]he right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss [—] the right to cross-examine the accuser; both 'ensur[e] the integrity of the fact-finding process.'" (quoting *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987)) (third alteration in original)). Not only is face-to-face confrontation essential to fairness, it is essential to the appearance of fairness. "Telephonic testimony conveys the impression that the hearing is perfunctory and not an important stage in the Social Security disability process." *Comments of the Association of Administrative Law Judges Regarding Social Security Administration Notice of Proposed Rulemaking*, http://www.aalj.org/pdf/08d003.pdf (last visited August 10, 2011).

Cross-examination is a vital aspect of a Social Security administrative hearing, and medical expert testimony is critical. *See* 5 U.S.C. § 556(d) ("A party is entitled . . . to conduct such cross-examination as may be required for a full and true disclosure of the facts."). The Supreme Court of the United States has often stressed the usefulness of cross-examination as a tool for evaluating a witness's credibility. *See, e.g.*, *Portuondo v. Agard*, 529 U.S. 61, 87 (2000) (maintaining that "[c]ross-examination is the criminal trial's primary means of contesting the credibility of any witness"); *Lilly v. Virginia*, 527 U.S. 116, 124 (1999) (stating that cross-examination is the "greatest legal engine ever invented for the discovery of truth" (quotation marks omitted)). Cross-examination is not nearly as effective when the questioner cannot adjust his or her questions based on the appearance and demeanor of the witness.

At least once during the hearing the medical expert "cut out," *see* Administrative R. at 66, and during Ms. Edwards's cross, the medical expert stated that he was "having a little difficulty

hearing" Ms. Edwards's counsel, *id.* at 91. Such interruptions may have impeded the flow of the cross-examination in a way that would not have occurred in person or by video teleconference. Although Ms. Edwards did have an opportunity to cross-examine the medical expert and elicit some admissions, *see Palaschak*, 2009 WL 6315324, at *12 (finding that telephonic testimony of vocational expert was harmless error in part because claimant was able to cross-examine the witness extensively), it is impossible for this Court to determine, based on the record before it, whether Ms. Edwards was able to conduct the cross-examination she intended when she believed the medical expert would be appearing in person.

ALJ Thomas often found that the medical expert testified "persuasively," Administrative R. at 15, 23, 24, but the ALJ's ability to evaluate the medical expert's credibility may have been impaired by the medium. Given that the Appeals Council's remand order specifically required ALJ Thomas to obtain testimony from a medical expert, *see id.* at 137, and that the ALJ reached a different decision based in part on the testimony of the medical expert, the Court cannot conclude that the ALJ would have reached the same decision had the medical expert instead testified in person or by video teleconference.

It also bears noting that the transcript of the medical expert testimony contains many gaps, shown in the record as "[INAUDIBLE]." *See id.* at 65, 89, 90, 96, 97, 106. While some of these gaps are inconsequential, others make it difficult to understand what the medical expert was saying. As in *Ainsworth*, the Commissioner arguably has not "met his obligation to provide a copy of the 'transcript of the record including the evidence upon which the findings and decision complained of are based.'" *Ainsworth*, 2010 WL 2521432, at *4 (quoting 42 U.S.C. § 405(g)). As the *Ainsworth* court explained,

> The circumstances presented in this case, viewed as a whole, counsel strongly in favor of remanding the matter so: (1) the ALJ can obtain the required expert

medical testimony in an appropriate manner; (2) a complete record of that testimony can be prepared for use on appeal; and (3) the bases of those critical expert medical opinions will be discernible.

*Id.* at *4. This Court agrees with the *Ainsworth* court that a remand is necessary.

## VI.

As remand is warranted on the basis that the medical expert testified telephonically, there is no need to reach the merits of Ms. Edwards's other claims. The Court nonetheless reminds the ALJ in any future Social Security administrative hearing to review the briefs in this case and to develop the administrative record as necessary, assess alleged impairments in combination, acknowledge the treating physician rule and give it proper deference, apply the correct legal standard, and adequately explain his or her credibility findings.

Ms. Edwards's Motion for Order Reversing Decision [doc. # 15] is GRANTED to the extent it seeks to remand this case for a *de novo* hearing, and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner [doc. # 16] is DENIED. **The Clerk of Court shall enter judgment in accordance with this Order and close the file.**

        **IT IS SO ORDERED.**

/s/    <u>Mark R. Kravitz</u>
       United States District Judge

Dated at New Haven, Connecticut: **August 10, 2011.**